**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**CEDAR RAPIDS DIVISION**

| | |
|---|---|
| DOUGLAS NOREM,<br><br>Plaintiff,<br><br>vs.<br><br>CITY OF CEDAR RAPIDS, et al.,<br><br>Defendants. | No. C25-0057-LTS-MAR<br><br>**MEMORANDUM OPINION AND ORDER** |

This case is before me on three motions for summary judgment: a pro se motion (Doc. 40) for partial summary judgment filed by plaintiff Douglas Norem, a second pro se motion (Doc. 62) for partial summary judgment by Norem and a motion (Doc. 83) for summary judgment filed jointly by all defendants (the City of Cedar Rapids and various Cedar Rapids Police Officers involved in the arrest and prosecution of Norem). Each motion has been resisted (Docs. 46, 47, 73, 86, 94) and replied to (Docs. 48, 81, 91). Also before me is Norem's objection (Doc. 99) to an order allowing defendants to supplement the summary judgment record and Norem's motion (Doc. 103) to supplement the summary judgment record. Oral argument is not necessary. *See* LR 7(c).

## *I. PROCEDURAL HISTORY*

Norem filed this pro se 42 U.S.C. § 1983 case on April 30, 2025. He paid the $405 filing fee. Defendants filed a motion to dismiss on June 23, 2025. In response, Norem filed a motion to amend, which the court granted on July 1, 2025. The court docketed Norem's amended complaint (Doc. 18) on July 1, 2025. In his amended complaint, Norem makes six claims:

- Count I: Unlawful search and seizure under the Fourth Amendment based on a 'ring test' of Norem's cell phone and the time between the application for a search warrant and the subsequent search of Norem's phone.
- Count II: A Fourteenth Amendment claim for malicious prosecution following Norem's arrest by defendants on November 21, 2024.
- Count III: A claim for failure to train pursuant to *Monell v. Department of Soc. Svcs.*, 436 U.S. 658 (1978).
- Count IV: A state tort claim for false arrest/imprisonment.[1]
- Count V: A procedural due process claim based on the publication of Norem's arrest and prosecution. (The Stigma-Plus claim.)
- Count VI: A claim for punitive damages.

Defendants filed their answer (Doc. 23) on July 14, 2025. On August 14, 2025, the court entered a scheduling order and the parties engaged in a spirited round of discovery disputes. *See* Docs. 38, 43, 45, 55, 72. Trial is currently scheduled for March 22, 2027.

## *II. APPLICABLE STANDARDS*

### *A. Motion for Summary Judgment*

Any party may move for summary judgment regarding all or any part of the claims asserted in a case. Fed. R. Civ. P. 56(a). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

[1] At various points in his other pleadings Norem appears to allege that this was a violation of his constitutional rights. However, as will be discussed more below, that is not how he pled the claim.

A material fact is one that "'might affect the outcome of the suit under the governing law.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "the substantive law will identify which facts are material." *Id.* Facts that are "critical" under the substantive law are material, while facts that are "irrelevant or unnecessary" are not. *Id.*

An issue of material fact is genuine if it has a real basis in the record, *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986)), or when "'a reasonable jury could return a verdict for the nonmoving party' on the question." *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005) (quoting *Anderson*, 477 U.S. at 248). Evidence that only provides "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, or evidence that is "merely colorable" or "not significantly probative," *Anderson*, 477 U.S. at 249–50, does not make an issue of material fact genuine.

As such, a genuine issue of material fact requires "sufficient evidence supporting the claimed factual dispute" so as to "require a jury or judge to resolve the parties' differing versions of the truth at trial." *Anderson*, 477 U.S. at 248–49. The party moving for entry of summary judgment bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show a lack of a genuine issue." *Hartnagel*, 953 F.2d at 395 (citing *Celotex*, 477 U.S. at 323). Once the moving party has met this burden, the nonmoving party must go beyond the pleadings and by depositions, affidavits, or otherwise, designate specific facts showing that there is a genuine issue for trial. *Mosley v. City of Northwoods*, 415 F.3d 908, 910 (8th Cir. 2005). The nonmovant must show an alleged issue of fact is genuine and material as it relates to the substantive law. If a party fails to make a sufficient showing of an essential element of a claim or defense with respect to which that party has the burden of proof, then the opposing party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 322.

In determining if a genuine issue of material fact is present, I must view the evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587–88. Further, I must give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts. *Id.* However, "because we view the facts in the light most favorable to the non-moving party, we do not weigh the evidence or attempt to determine the credibility of the witnesses." *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 784 (8th Cir. 2004). Instead, "the court's function is to determine whether a dispute about a material fact is genuine." *Quick v. Donaldson Co.*, 90 F.3d 1372, 1376–77 (8th Cir. 1996).

### *B. Section 1983*

42 U.S.C. § 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Section 1983 was designed to provide a "broad remedy for violations of federally protected civil rights." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 685 (1978). However, 42 U.S.C. § 1983 provides no substantive rights. *See Albright v. Oliver*, 510 U.S. 266, 271 (1994); *Graham v. Conner*, 490 U.S. 386, 393-94 (1989); *Chapman v. Hou. Welfare Rts. Org.*, 441 U.S. 600, 617 (1979). "One cannot go into court and claim a 'violation of [42 U.S.C.] § 1983' — for [42 U.S.C.] § 1983 by itself does not protect anyone against anything." *Chapman*, 441 U.S. at 617. Rather, 42 U.S.C. § 1983 provides a remedy for violations of all "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." 42 U.S.C. § 1983; *see also Albright*, 510 U.S. at 271 ("Section 1983 'is not itself a source of substantive rights, but merely provides "a method for vindicating federal rights elsewhere conferred." (quoting *Baker*

*v. McCollan*, 443 U.S. 137, 144, n. 3 (1979)); *Graham*, 490 U.S. at 393-94 (same); *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980) ("Constitution and laws" means 42 U.S.C. § 1983 provides remedies for violations of rights created by federal statute, as well as those created by the Constitution.). To state a claim under 42 U.S.C. § 1983, a plaintiff must establish: (1) the violation of a right secured by the Constitution or laws of the United States and (2) the alleged deprivation of that right was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

***C. Qualified Immunity***

Qualified immunity shields a government official from individual liability when his conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *accord Davis v. Hall*, 375 F.3d 703, 711-12 (8th Cir. 2004). "The Supreme Court has generously construed qualified immunity protection to shield 'all but the plainly incompetent or those who knowingly violate the law.'" *Davis*, 375 F.3d at 711-12 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Id.* (citing *Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir. 1992)). To determine whether a defendant is entitled to qualified immunity, courts ask (1) whether the facts alleged or shown establish a violation of a constitutional or statutory right, and (2) whether that constitutional right was clearly established as of the time of the alleged violation. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Unless the answer to both of these questions is yes, a defendant is entitled to qualified immunity. *See Burton v. St. Louis Bd. of Police Comm'rs*, 731 F.3d 784, 791 (8th Cir. 2013).

When qualified immunity is raised as a defense at the summary judgment stage, the plaintiff must produce evidence to create a genuine issue of fact regarding whether defendants(s) violated "clearly established" law. *Johnson v. Fankell*, 520 U.S. 911, 915 (1997).

## *III. RELEVANT FACTS*

Regardless of the qualifications provided in the parties' filings, this is not a case of complex factual disputes. A team of Cedar Rapids, Iowa, police officers were engaged in a sting operation to address crimes against minors. On November 21, 2024, those officers arrested Norem after he engaged in communication with a fake 'profile' created by the officers. Norem was prosecuted for sexual exploitation of a minor and interference with official acts. He was acquitted of both counts. The details of the arrest of the prosecution provide the basis for this case and almost all the facts related to those incidents are clearly supported by documented evidence in the record. The questions at issue are the legal significance of those facts. Thus, unless otherwise noted, I find the following facts undisputed.

On November 21, 2024, defendants were using a website named "Skip the Games" and a fake profile named "Liv" to communicate with persons potentially interested in prostitution. Defendants advertised Liv as a 19-year-old female escort. At approximately 8:00 p.m. that night, phone number 319-300-7353 began texting Liv. That phone number belongs to Norem.[2] Norem inquired about Liv's availability, Liv responded positively, they exchanged transaction details, and then Liv spontaneously stated that she was 15 years old. Norem asked "can you send me a picture holding two fingers by your boob? Defendants sent a photo that appeared to be a female holding two fingers above her head. Norem responded by asking, "can you take the picture with your two fingers by your bare boob?" However, defendants did not send the requested picture.

Norem then proposed they meet in a parking lot. Norem asked for a description of what Liv would be wearing. Liv texted Norem a picture of the meet location and then told him she had arrived. When Norem did not arrive, defendants called him (as Liv)

---

[2] The question of when the defendants could establish that the phone number belongs to Norem is relevant to Norem's arguments related to the ring test. However, the phone number was Norem's.

and Norem answered. Although he states he does not recall the exact details of the conversation, he admits that he responded that he would arrive soon.

Some of the defendants then began tracking a vehicle, now known to be Norem's, that had been idling in the area. Shortly thereafter, other defendants observed Norem on foot in an area near the parking lot. He was dressed in manner defendants thought was consistent with someone about to meet a prostitute given that it was relatively cold that night. Norem approached the proposed parking lot location on foot, surveyed it, and began to return to his car. Defendants then approached him.

When Norem was approached, he was moving at an elevated speed but stopped when commanded to do so. Defendants contend Norem's speed was an attempt to flee while Norem states he was moving swiftly because it was cold. Norem was arrested. Incident to the arrest, he was patted down and his locked cell phone was seized. Per the standard procedure of the sting operation (named Nighthawk), defendants called the number that had been communicating with Liv and observed that Norem's seized cell phone rang. They did not otherwise disturb the phone. Defendants' standard procedure states that seized phones should be placed in airplane mode, connected to a charger, and placed in a Faraday bag.

On December 5, 2024, one of the defendants, Officer Cavin, applied for and received a search warrant for Norem's phone. The "Property to be Seized" portion of the warrant application stated:

> The RETURN portion of this warrant will reflect the actual seizure of the articles. The forensic imaging and examination will exceed ten days or more based on (1) the high volume of data to be processed and examined; (2) the technical requirements and processes required to conduct complete and accurate examinations; but all results will be submitted as evidence at a later date.

Doc. 83-3 at 48. The warrant application described the device to be searched, noted it was in defendants' custody, and allowed for:

> A complete search and examination of the above-referenced device, to include but not limited to all Call Logs, Messaging, Contacts, Images, Videos, Audio Files, Internet usage and any other data contained within the phone's internal storage, storage accessible by the device and/or external storage devices such as subscriber identity module (SIM) and/or secure digital (SD) cards if present, relating to the following [description of the charge]. Pursuant to Iowa Code 808, your Affiant requests to conduct a search of the above-listed cellular telephone(s)/digital device(s) without a specific time period, due to the nature of the device to be searched.

Doc. 83 at 47. The warrant went on to authorize any law enforcement officer, or anyone associated with the prosecution of the defendant, to search the device and described with specificity what could be searched and how it could be done. Two days later, on December 7, 2024, Cavin forwarded the warrant to the department in charge of searching digital devices and returned the execution of the warrant on the same date.[3] The search of the phone was completed on February 25, 2025.[4] Cavin reviewed the results of the search on February 27, 2025.

Norem was ultimately charged with the two counts noted above and proceeded to a bench trial. On March 5, 2025, he was acquitted on both counts, with the state court finding:

> The State did not prove beyond a reasonable doubt that the Defendant's request for a photo from the undercover officer posing as another individual was made with the intent to elicit a sexually explicit image… as required by Iowa Code sections 728.12(1) and 702.17. Rather, the weight of the evidence was that the request was an attempt to verify that the individual – who was in reality a police officer – was not law enforcement and was not a scammer. The State did not prove beyond a reasonable doubt that the Defendant knowingly resisted a person known to be a peace officer. The

[3] Iowa Code § 808.8 states that, "[a] search warrant shall be executed within ten days from its date; failure to execute within that period shall void the warrant…"

[4] Norem notes that when Cavin was deposed, he did not know the contents of Iowa Code § 808.8. Norem spends significant time discussing the exact timeline of Cavin reviewing the contents of the search and admitted misstatements Cavin made regarding the same. However, a long recitation of those facts is not relevant to the legal issues in this case.

> weight of the evidence tended to show that when the Defendant realized police officers were attempting to arrest him, he submitted to them.

Doc. 46-1 at 5. Because of the arrest and prosecution, Norem lost his job and has been unable to secure a similar position within the same industry.

## ***IV. DISCUSSION***

Although there are three pending motions for summary judgment, with defendants' filed last, their argument that Norem has failed to allege any constitutional violations and that they are entitled to qualified immunity on Norem's constitutional claims is correct. Accordingly, I will start with defendants' motion for summary judgment.

### ***A. Count I***

In Count I, Norem alleges defendants violated his Fourth Amendment rights when they called his cell phone after he was arrested (hereinafter referred to as the ring test) but before they secured a warrant. Norem also alleges that his rights were violated when defendants failed to conduct the search of his phone until February 2025, after obtaining the warrant to do so in December 2024. Defendants argue that they are entitled to qualified immunity on this claim:

> The individual officers named as defendants in this case are all entitled to qualified immunity first and foremost because, for the reasons already described herein, neither the ring test nor the digital extraction of Plaintiff's cell phone after expiration of the search warrant violated Plaintiff's constitutional or statutory rights. They are also entitled to qualified immunity because, even if the Court were to find that the ring test or the digital extraction of Plaintiff's cellphone after expiration of the search warrant violated Plaintiff's constitutional or statutory rights, those rights were far from clearly established as of November 21, 2024 (the date of the ring test) and February 25, 2025 (the date of the digital extraction of Plaintiff's cell phone).[]

Doc. 83-2 at 11.

As noted above, qualified immunity is a two-question inquiry: (1) whether the facts alleged or shown establish a violation of a constitutional or statutory right, and (2) whether that constitutional right was clearly established as of the time of the alleged violation. Courts may consider the questions in any order and once qualified immunity is raised, the burden shifts to the plaintiff to produce evidence that defendants(s) violated "clearly established" law. *Kulkay v. Roy*, 847 F.3d 637, 642 (8th Cir. 2017); *Kuessner v. Wooten*, 987 F.3d 752, 755 (8th Cir. 2021). To be clearly established, the "contours of the right must be sufficiently clear that a reasonable official would [have understood] that what he is doing violates that right." *Quraishi v. St. Charles Cty., Mo.*, 986 F.3d 831, 835 (8th Cir. 2021) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The law, at the time of the alleged violation, must give officials "'fair warning' their conduct was unlawful." *Id.* (quoting *Sisney v. Reisch*, 674 F.3d 839, 845 (8th Cir. 2012)).[5] Thus, for Norem to defeat defendants' claim of qualified immunity, he must establish the existence of a genuine issue of material fact that defendants violated his rights regarding his cell phone and also produce evidence showing that defendants' conduct was clearly established to be a constitutional violation. He has done neither.[6]

[5] Rarely there is the "obvious case" where a government official's conduct is unlawful without precedent, but most cases will require precedent, controlling authority, or a robust consensus of cases of persuasive authority finding the conduct at issue is unconstitutional. *Id.* This is not that type of case.

[6] Norem's filings often confuse the various issues. For example, in one section of his resistance to defendants' motion for summary judgment, he is ostensibly arguing against summary judgment on both Counts I and IV and states, "[t]he ring test cannot simultaneously be both insufficiently consequential to be a search and sufficiently consequential to confirm identity. If the ring test was constitutionally trivial, Defendants must point to pre-arrest identity linkage — and the contemporaneous radio record at 21:38:40, 21:40:16, and 21:40:36 forecloses that showing." Doc. 86 at 16. However, those issues are completely separate. Whether or not defendants violated a clearly established constitutional right regarding the ring test or met the elements of the tort of false arrest may or may not involve the same facts but are completely unrelated as to applying the relevant legal standards. And Norem's failure to recognize this distinction often renders his filings either hard to follow or complete legal gibberish. Regardless, given the deference due to pro se filings, I give his arguments the most liberal possible reading.

First, I consider the ring test. The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. A person's private cell phone qualifies as an "effect" for Fourth Amendment purposes, and its contents are protected from unlawful searches. *Riley v. California*, 573 U.S. 373, 386 (2014). Specifically, the Supreme Court stated, "that officers must generally secure a warrant before conducting [] a search" of a cell phone. *Id*. Norem relies exclusively on *Riley* and *Arizona v. Hicks*, 480 U.S. 321, 324 (1987) (clarifying the plain view doctrine to hold that moving objects to observe them more clearly constituted a search) to argue the ring test violated his clearly established constitutional rights. However, the courts that have considered the question have come to the opposite conclusion. At least two circuit courts of appeal have considered similar circumstances as the ring test used in this case. In *United States v. Lawing*, 703 F.3d 229, 238 (4th Cir. 2012), law enforcement officers had a description of a suspect and his vehicle but knew him as "Drew." [7] Law enforcement stopped a vehicle matching their information but the driver's identification did not identify him as "Drew." Officers then called the cell phone number they had for "Drew" and observed that the driver's phone rang. The Fourth Circuit stated:

> At the outset, we note that [defendant], in his brief, characterizes the officers' actions as a "search" of his cell phone. The district court, however, found the "[o]fficers did not search [defendant]'s cell phone for any information." (J.A. 149). We agree with the district court's assessment, as nothing in the record supports [defendant]'s claim that his cell phone was the subject of a search. The police did not attempt to retrieve any information from within the phone. Instead, the officers' possession of [defendant]'s cell phone was limited to quickly determining whether [defendant]'s phone would ring when Drew's number was dialed. Detective Bacote did not seize [defendant]'s cell phone to gain information from within the phone and possessed it for no other purpose than confirming [defendant]'s identity as Drew.

[7] *Lawing* predates *Riley* but has continued to be positively cited as good law related to the ring test. *See e.g., United States v. Conley*, 342 F. Supp. 3d 247, 265 (D. Conn. 2018).

*Lawing*, 703 F.3d at 238.

Similarly, in *United States v. Brixen*, 908 F.3d 276, 280 (7th Cir. 2018), law enforcement officers lawfully took a suspect's cell phone into their possession incident to arrest.

> To illustrate that the officers knew why [defendant] was there and that he had been interacting with an undercover detective, Baumgarten used his police cell phone to send a Snapchat message to "Snappyschrader." [Defendant] watched the phone held by Baumgarten as a Snapchat notification appeared on the screen and indicated he had received a message from "Bored_4_teen_f." Baumgarten did not access any content within [defendant]'s phone, nor did he manipulate the phone in any way before he obtained a search warrant.

*Brixen*, 908 F.3d at 279. The Seventh Circuit stated:

> Here, there is no dispute that the seizure of the cell phone incident to [defendant]'s arrest was lawful. What is disputed is whether Baumgarten's actions after the phone was seized constituted an unreasonable search in violation of the Fourth Amendment. Because we find Baumgarten did not search [defendant] phone, nor did [defendant] have a reasonable privacy interest in the information observed by Baumgarten, we find no constitutional violation occurred... Baumgarten did not retrieve any information from [defendant]'s phone. *Riley* concerned affirmative manipulation of a cell phone in order to retrieve information from within the phone. Here, since the phone's content was not affirmatively accessed by law enforcement officers, no search occurred. Nevertheless, [defendant] argues he had a reasonable expectation of privacy in the contents of his phone screen because he attempted to preserve the notifications as private by keeping his phone in his pocket. But once he was arrested, he retained no significant Fourth Amendment interest in the privacy of his person and the search incident to arrest allowed law enforcement officers to seize his cell phone. *Riley*, 134 S. Ct. at 2488 (citing *United States v. Robinson*, 414 U.S. 218, 237, 94 S. Ct. 467, 38 L. Ed. 2d 427 (1973) (Powell J., concurring) ("I believe that an individual lawfully subjected to a custodial arrest retains no significant Fourth Amendment interest in the privacy of his person"), and *United States v. Chadwick*, 433 U.S. 1, 16 n. 10, 97 S. Ct. 2476, 53 L. Ed. 2d 538 (1977) (noting that searches of a person incident to arrest are justified in part by "reduced expectations of privacy caused by the arrest") ). Upon arrest, [defendant] no longer had a right to keep his

> phone in his pocket and once the phone was seized the notification projected on the screen was plain to see, just as a ringtone would have been plain to hear. And just as an individual who fails to conceal a phone's ring from those in earshot does not have a reasonable expectation of privacy, an individual who allows notifications to appear to those in plain sight does not have a reasonable expectation of privacy.

*Brixen*, 908 F.3d at 280–82.

Numerous federal district courts have reached the same conclusion. *See, e.g., Rodriguez v. United States*, No. 4:19CR117(1), 2024 WL 5456738, at *5 (E.D. Tex. Nov. 7, 2024), report and recommendation adopted, No. 4:19-CR-117(1)-SDJ, 2025 WL 472364 (E.D. Tex. Feb. 12, 2025) (collecting cases related to ring tests and stating, "[o]ther courts have similarly found that an officer's mere observation of a text message, phone number, or information displayed on a cell phone's screen—without manipulating the cell phone in order to retrieve information from within the phone—does not constitute a search.).

Because courts have considered the constitutionality of the ring test and consistently concluded it does not constitute a search, Norem has failed to allege that the defendants violated his constitutional rights.[8] Because no constitutional right was violated, there can be no clearly established right and defendants are entitled to qualified immunity as to the ring test.

Next, I consider Norem's argument that his constitutional rights were violated because defendants did not conduct the digital examination of his cell phone until February 25, 2025. Norem's argument is that under Iowa law, defendants had ten days to execute the search warrant from December 5, 2024, and because they did not finish the digital search until February 25, 2025, they violated Iowa Code § 808.8. That argument fails for multiple reasons.

---

[8] I am aware of no case that came to a contrary conclusion.

First, Norem provides no citation that defendants' conduct was improper under Iowa law and the terms of the warrant/warrant application cited above. Throughout his filings, Norem makes assertions such as "'execution under Iowa Code § 808.8 means actual searching, not administrative forwarding.'" Doc. 86 at 23. However, he does not support those assertions with actual law. Rather, he provides 'logical' narratives and suppositions about the meaning of things such as "statutory structure." *Id*. That is not sufficient to create a genuine issue of material fact that his rights were violated.

Second, and very relatedly, Norem does not ground his argument in the Fourth Amendment. Rather, he relies on Iowa law, but "a violation of state law, without more, does not state a claim under the federal Constitution or 42 U.S.C. § 1983." *Blackett v. Rapid City Area Sch. Dist.*, 1 F. App'x 589, 591 (8th Cir. 2001) (internal citations omitted).

Third, the Eighth Circuit Court of Appeals has previously addressed the argument raised by Norem, albeit in a slightly different context, and rejected it. As described in *United States v. Koch*, No. 3:08-CR-0105-JAJ, 2009 WL 10697502 (S.D. Iowa June 1, 2009), on May 7, 2008, law enforcement received a warrant to search a suspect's residence. The warrant specifically allowed law enforcement to seize computer equipment related to illegal gambling activity. Law enforcement executed the search warrant and, among other things, took a thumb drive into their possession. A case proceeded against the suspect related to the illegal gambling activity, in which he pleaded guilty, but no further action was taken on the thumb drive. In January 2008, a law enforcement officer rediscovered the thumb drive and found an image on it he believed to be child pornography. The defendant was ultimately charged with child pornography and then moved to suppress the search of the thumb drive:

> The defendant argues that the evidence collected as a result of the January 8, 2008, search should be suppressed because the search warrant was stale. The defendant also argues that the search violated Federal Rule Criminal Procedure 41 and I.C.A. § 808.8. The government responds that the search warrant authorized the January 8, 2008, search of the thumb drive. The

> government also contends that Agent Miller lawfully reviewed evidence contained on the thumb drive pursuant to I.C.A. § 809.5 and that the search did not violate Rule 41.

*Koch*, 2009 WL 10697502, at *2. The court found:

> so long as the search and seizure did not violate the Fourth Amendment, evidence is not inadmissible by reason of it being obtained in violation of state law. *See United States v. Timley*, 443 F.3d 615, 624 (8th Cir. 2006) ("Evidence seized by state officers in conformity with the Fourth Amendment will not be suppressed in a federal prosecution simply because the underlying search warrant failed to conform to state law.") (quoting *United States v. Dishman*, 377 F.3d 809, 811 (8th Cir. 2004)(internal quotation marks omitted) ); *See also United States v. Maholy*, 1 F.3d 718, 721 (8th Cir. 1993) ("When evidence obtained by state law enforcement officers is offered in a federal prosecution, 'the legality of [the] search and seizure is not determined by reference to a state statute, but rather is resolved by fourth amendment analysis.' ") (quoting *United States v. Tate*, 821 F.2d 1328, 1330 (8th Cir. 1987) ). Thus, the question before the court is whether the search of the thumb drive violated the Fourth Amendment. The defendant does not dispute that probable cause existed under the May 7, 2007, search warrant to seize the thumb drive; rather he contends that the search warrant did not authorize agents to search this item on January 8, 2008. He contends that the probable cause supporting the search warrant had dissipated by that date because the defendant pleaded guilty to state gambling and drug charges in October of 2007. The court disagrees. "The Fourth Amendment itself 'contains no requirements about when the search or seizure is to occur or the duration.' " *United States v. Syphers*, 426 F.3d 461, 469 (1st Cir. 2005) (citation omitted). "A warrant is stale if probable cause no longer existed at the time the warrant was executed." *United States v. Robinson*, 536 F.3d 874, 877 (8th Cir. 2008) (citation omitted). "Probable cause means a 'fair probability that contraband or evidence of a crime will be found in a particular place,' given the circumstances set forth in the affidavit." *United States v. Horn* 187 F.3d 781, 785 (8th Cir. 1999) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "There is no bright-line test for determining when information is stale … Time factors must be examined in the context of a specific case and the nature of the crime under investigation." *United States v. Summage*, 481 F.3d 1075, 1078 (8th Cir. 2007) cert. denied, 128 S. Ct. 875 (2008) (as cited in *United States v. Perry*, 531 F.3d 662, 666 (8th Cir. 2008) )… The court finds that on May 8, 2008, Agent Weidman had probable cause to believe that contraband or evidence was contained on the thumb drive. The thumb drive had been in

> state custody since its seizure on May 7, 2007. Once the thumb drive was in state custody, the evidence was "frozen in time" and there was no danger that probable cause ceased to exist. *United States v. Triumph Capital Group, Inc.*, 211 F.R.D. 31, 66 (D. Conn. 2002) (citations omitted). "Courts have permitted some delay in the execution of search warrants involving computers because of the complexity of the search." *Syphers*, 426 F.3d at 469 (citing *United States v. Gorrell*, 360 F. Supp.2d 48, 55 n. 5 (D.D.C. 2004); *Triumph Capital Group, Inc.*, 211 F.R.D. at 66). In such cases, the court found that the delay in searching computers and related equipment did not effect the existence of probable cause. *See Syphers*, 426 F.3d at 469 ("Under the circumstances, the five-month delay did not invalidate the search of appellant's computer because there is no showing that the delay caused a lapse in probable cause …"); *Triumph Capital Group, Inc.*, 211 F.R.D. at 66 ("Thus, there was no danger that probable cause ceased to exist during the search of the hard drive."). Similarly, the court finds that once seized, the passage of time did not dissipate the existence of probable cause to search the thumb drive.

*Koch*, 2009 WL 10697502, at *2-3.

On appeal, the Eighth Circuit affirmed, stating that, "[defendant] cites Iowa Code § 808.8 and *Sgro v. United States*, 287 U.S. 206, 210–11, 53 S. Ct. 138, 77 L. Ed. 260 (1932), both of which provide that a search warrant not executed within ten days of issuance is no longer valid. Since the original search warrant in this case was executed the same day it was issued, the ten-day rule in *Sgro* and Iowa Code § 808.8 is not implicated." *United States v. Koch*, 625 F.3d 470, 476 (8th Cir. 2010). The Eighth Circuit also noted that "Iowa Code § 808.8 would not control in any event because the legality of a search and seizure in a federal prosecution is determined by federal law even if the persons conducting a search were state actors. *United States v. Maholy*, 1 F.3d 718, 721 (8th Cir.1993)." *Koch*, 625 F.3d at 476, n. 3.

Based on the forgoing, Norem has failed to allege that defendants violated his rights under the United States Constitution, much less any clearly established rights, by not completing the search of his cell phone until February 25, 2025. As such, defendants are entitled to qualified immunity.

### *B. Count II*

In Count II, Norem alleges "Fourteenth Amendment Violation (Malicious Prosecution)." Doc. 18 at 3. He states defendants "initiated and pursued criminal charges without probable cause, based on fabricated and unlawfully obtained evidence." *Id*. He goes onto state that "these facts support a fourteenth Amendment claim for malicious prosecution." *Id*.

Again, defendants argue that Norem has failed to allege a constitutional violation and that they are entitled to qualified immunity. First, they argue (correctly) that there is no recognized claim for malicious prosecution under the Fourteenth Amendment. *See Albright v. Oliver*, 510 U.S. 266, 273 (1994) (the Fourth Amendment, not the concept of substantive due process under the Fourteenth Amendment, provides the constitutional guarantee against unlawful pretrial deprivations of liberty); *see also Brown v. City of Dermott Arkansas*, 151 F.4th 985, 990 (8th Cir. 2025) ("Because [a malicious prosecution claim] is housed in the Fourth Amendment, the plaintiff also has to prove that the malicious prosecution resulted in a seizure of the plaintiff.").

In his resistance, Norem acknowledges that his claim should be brought pursuant to the Fourth Amendment. Despite that acknowledgment, Norem failed to file a motion that complies with LR 15 to amend his complaint to bring his malicious prosecution claim under the Fourth Amendment (or as a state tort claim). Thus, his claim as plead is brought pursuant to the Fourteenth Amendment. Because no court has recognized such a claim, the right is clearly not established, and the defendants are entitled to qualified immunity.

Even assuming Norem's claim was for malicious prosecution under the Fourth Amendment, it would still fail. As the Eighth Circuit has explained:

> As for federal law, the Supreme Court recently declared that malicious prosecution is actionable under the Fourth Amendment. *Thompson v. Clark*, --- U.S. ----, 142 S. Ct. 1332, 1337, 212 L. Ed. 2d 382 (2022). A plaintiff must show that (1) the criminal proceeding was instituted without probable cause, (2) the defendant's motive in instituting the proceeding was

> malicious, and (3) the prosecution terminated in acquittal or discharge of the accused. *Id.* at 1338. The absence of probable cause, therefore, is an essential element of a claim alleging malicious prosecution under both federal and Iowa law… Probable cause exists under the Fourth Amendment "when a police officer has reasonably trustworthy information that is sufficient to lead a person of reasonable caution to believe that the suspect has committed or is committing a crime." *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010). Under Iowa law, in the context of a malicious prosecution claim, probable cause exists if the arresting officer "correctly or reasonably believes" (1) that the accused acted in a particular manner, (2) that those actions constituted the offense charged, and (3) that the officer is "sufficiently informed" about the law and facts to justify his initiating the prosecution. *Sisler v. City of Centerville*, 372 N.W.2d 248, 251 (Iowa 1985).

*Klein v. Steinkamp*, 44 F.4th 1111, 1115 (8th Cir. 2022). Courts have defined "malice" as "without probable cause and for a purpose other than bringing the defendant to justice." *Thompson v. Clark*, 596 U.S. 36, 44 (2022).

Norem has created a genuine issue of material fact on only one of the three elements of malicious prosecution: favorable termination of the criminal case. However, "an acquittal does not necessarily signal an absence of probable cause for an arrest, for the standards for a determination of probable cause and for a criminal conviction markedly differ." *Brumfield v. Jones*, 849 F.2d 152, 155 (5th Cir. 1988) (citation omitted). There is no evidence in the record of a malicious motive for Norem's prosecution. Rather, all the evidence in the record indicates (1) that Norem was unknown to the officers until he was taken into custody and (2) he was taken into custody based exclusively on the conversation he had with "Liv" and his physical actions near the proposed meet spot in the parking lot. Thus, to the extent the scienter element of maliciousness is required, there is no genuine issue of material fact on that issue.

More importantly, there was probable cause to arrest Norem. Because probable cause is an objective standard, an arrest is lawful if an officer had probable cause to arrest for *any* offense, not just the offense cited at the time of arrest or booking. *See D.C. v.*

*Wesby*, 583 U.S. 48, 54 (2018), *citing Devenpeck v. Alford*, 543 U.S. 146, 153–155, and n. 2 (2004). As noted in defendants' brief:

> A person commits Sexual Exploitation of a Minor when they "attempt to cause…a law enforcement officer or agent posing as a minor to engage in a prohibited sexual act." Iowa Code §728.12. "Nudity of a minor for the purpose of arousing or satisfying the sexual desires of a person who may view a visual depiction of the nude minor" is a "prohibited sexual act." Iowa Code §728.1(7)(g)… A person commits the offense of Enticing a Minor "when, without authority and with the intent to commit an illegal sex act upon or sexual exploitation of a minor under the age of sixteen, the person entices or attempts to entice a person reasonably believed to be under the age of sixteen including a law enforcement officer or agent posing as a minor under the age of sixteen." Iowa Code §710.10(2). "Enticement" includes communications through text. Iowa Code §710.10(7).

Doc. 83-2 at 15-16. Norem does not dispute that he sent a message to "Liv," who had by then identified herself as being 15, asking for a picture of her "bare boob." That request came in the context of a conversation that was very specifically for the purpose of arranging a sexual encounter. Regardless of the fact that the state court ultimately found that Norem made the "bare boob" request to prove that "Liv" was either a police officer or someone attempting to scam him, the request provided officers probable cause to arrest him under the Iowa Code sections cited above. Thus, even if Norem had properly pleaded this claim, he has failed to allege a constitutional violation, much less one that is clearly established, and the defendants are entitled to qualified immunity.[9]

[9] Because there was confusion in the parties' filings about the appropriate legal standard for prostitution-related crimes (*see* Doc. 109), I do not discuss those. Suffice to say there was likely also probable cause to arrest Norem for at least one prostitution related infraction. Additionally, defendants concede there are disputed facts regarding probable cause for the interference with official acts charge and do not list it among the counts for which defendants had probable cause. *See* Doc. 83-2 at 15.

### *C. Count V*

Count V is Norem's third and final count that is alleged against the individual defendants as a constitutional violation. It is labeled "Procedural Due Process Violation (Stigma-Plus)." Doc. 18 at 4. Norem states that four charges, including the two he was ultimately charged with, were noted against him in the "public system." He states that the public posting of the accusations caused him reputational damage and violated his Fourteenth Amendment procedural due process rights under the doctrine known as the Stigma-Plus.

Defendants argues that in the Eighth Circuit, Stigma-Plus is limited to employment type claims:

> Defaming a governmental employee's reputation, good name, honor, or integrity in connection with terminating the employee, without giving the employee a name-clearing hearing, is a deprivation of the employee's constitutionally protected liberty interest. *Winskowski v. City of Stephen*, 442 F.3d 1107, 1109–10 (8th Cir.), cert. denied, 549 U.S. 975, 127 S. Ct. 435, 166 L. Ed. 2d 308 (2006); *see Bd. of Regents v. Roth*, 408 U.S. 564, 573, 92 S. Ct. 2701, 33 L. Ed. 2d 548 (1972). To state a "stigma plus" claim, the employee must allege: (1) an official made a defamatory statement that resulted in a stigma; (2) the defamatory statement occurred during the course of terminating the employee; (3) the defamatory statement was made public, *Mascho v. Gee*, 24 F.3d 1037, 1039 (8th Cir.1994); and (4) an alteration or extinguishment of a right or legal status, *Paul v. Davis*, 424 U.S. 693, 711, 96 S. Ct. 1155, 47 L. Ed. 2d 405 (1976).

*Brown v. Simmons*, 478 F.3d 922, 923 (8th Cir. 2007). In his resistance, Norem concedes that his Stigma-Plus claim faces "doctrinal challenges." Doc. 86 at 53. However, he argues that the test can be adapted to his case. He argues that he was terminated from his employment and that the charges were noted on his "FINRA" registration, which impairs his ability to get future employment as a financial advisor. *Id*. at 56; Doc. 86-4 at 9.

For starters, Norem's argument that the Stigma-Plus doctrine can be adapted to his procedural due process claim is not supported by the case law. In *Gunderson v.*

*Hvass*, 339 F.3d 639, 644 (8th Cir. 2003), the Eighth Circuit declined to extend the Stigma-Plus test to a sex offender registration based in part on *Connecticut Dep't of Pub. Safety v. Doe*, 538 U.S. 1 (2003). In *Connecticut Dep't of Pub. Safety*, sex offenders objected to a law that disclosed their sex offender status. The Supreme Court declined to extend procedural due process protection to the plaintiffs' claim and strongly inferred that their claim would need to be brought, if at all, as a substantive due process claim. *Id*. at 8-9. Norem's argument that public posting of criminal charges against him violated his procedural due process rights is similar to those previously rejected by the Supreme Court and Eighth Circuit.

Second, if any circuit has entertained a Stigma-Plus claim in the context of a criminal charge, it is the Ninth Circuit. However, under the Ninth Circuit's modified Stigma-Plus test, "[t]he absence of probable cause is a necessary element [for a] 'stigma-plus' claim.'" *Baddour v. Hart*, No. 14-CV-1355-PJH, 2016 WL 344711, at *9 (N.D. Cal. Jan. 28, 2016), *aff'd*, 743 F. App'x 868 (9th Cir. 2018) (internal citations omitted). As discussed above, the defendants had probable cause to arrest Norem. Thus, even if I were to adopt the Ninth Circuit test, Norem's claim would fail.

Third, and most importantly, even if Norem had alleged a procedural due process violation, it is not clearly established, a fact Norem concedes. Thus, defendants are entitled to qualified immunity.

### *D. Count III*

Count III is a *Monell* claim against the City of Cedar Rapids which is labeled "Monell Liability – 42 U.S.C. § 1983 (Failure to Train and Supervise)."[10] Doc. 18 at

[10] Norem and defendants dispute the precise *Monell* claim Norem is attempting to make. Defendants argue Norem's claim is for failure to train and supervise, as that is how the claim is titled. Norem argues, based on the substance of his claim and liberal pleading standards, that he is alleging failure to train, as well as improper customs, practices and deliberate indifference. Norem seeks leave to amend his complaint if I am inclined to agree with defendants. However, Norem is aware that amending a complaint is the correct remedy if he believes his pleading was

4.[11] Municipalities may be found liable in a § 1983 case under limited circumstances, pursuant to the rationale articulated in *Monell v. Department of Social Servs. of New York*, 436 U.S. 658 (1978). *See Szabla v. City of Brooklyn Park, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). Regarding *Monell* liability, the Eighth Circuit has stated:

> Section 1983 liability for a constitutional violation may attach to a municipality if the violation resulted from (1) an "official municipal policy," *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), (2) an unofficial "custom," id.; or (3) a deliberately indifferent failure to train or supervise, *see City of Canton, Ohio v. Harris*, 489 U.S. 378, 389, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989). Policy and custom are not the same thing. "[A] 'policy' is an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters."

---

deficient. Thus, he could have filed an appropriate motion to amend his complaint long ago. I do not grant him leave to do so at this stage of this case because his request does not comply with LR 15. Additionally, while I am inclined to agree with defendants, this is a distinction without a difference. Any type of *Monell* claim fails because Norem does not identify any constitutional violations committed by defendants. *See McCoy v. City of Monticello*, 411 F.3d 920, 922 (8th Cir. 2005) (summary judgment for defendant... precluded City from liability on an unconstitutional policy or custom theory); *Brockinton v. City of Sherwood*, 503 F.3d 667, 674 (8th Cir. 2007) (finding no *Monell* liability because plaintiff failed to show unconstitutional county policy or custom and reasoning that this circuit "has consistently recognized a general rule that, in order for municipal liability to attach, individual liability first must be found on an underlying substantive claim") (citation omitted).

[11] In *Will v. Michigan Dept. of State Police*, the Supreme Court ruled "that a State is not a person within the meaning of § 1983." 491 U.S. 58, 63 (1989). *See also Owens v. Scott Cty. Jail*, 328 F.3d 1026, 1027 (8th Cir. 2003) (stating that "county jails are not legal entities amenable to suit"); *Ketchum v. City of West Memphis, Ark.*, 974 F.2d 81, 82 (8th Cir. 1992) (stating that "departments or subdivisions" of local government are not "juridical entities suable as such"); and *De La Garza v. Kandiyohi Cty. Jail*, 18 Fed. Appx. 436, 437 (8th Cir. 2001) (affirming district court dismissal of county jail and sheriff's department as parties because they were not suable entities). The City of Cedar Rapids and the Cedar Rapids Police Department are not "persons" within the meaning of § 1983. Thus, as a general matter, Norem cannot maintain claims against them and to the extent Norem's claims, other than his *Monell* claim, are against those entities, they are denied. Similarly, "[a] suit against a public official in his official capacity is actually a suit against the entity for which the public official is an agent." *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006). For the same reason then, any claims against individual defendants in their official capacity are denied except to the extent they raised in the context of this *Monell* claim.

> *Mettler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999). Alternatively, a plaintiff may establish municipal liability through an unofficial custom of the municipality by demonstrating "(1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation." *Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1160 (8th Cir. 2014).

*Corwin v. City of Indep., MO.*, 829 F.3d 695, 699–700 (8th Cir. 2016). However, "neither municipalities nor government officials may be held liable for unconstitutional conduct under a theory of respondeat superior." *Rogers v. King*, 885 F.3d 1118, 1122 (8th Cir. 2018).

A supervisor may be held individually liable under § 1983 if he or she directly participates in the constitutional violation or fails to train or supervise the subordinate who caused the violation. *Tilson v. Forrest City Police Dep't*, 28 F.3d 802, 806 (8th Cir. 1994). The standard of liability for failure to train is deliberate indifference. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). The standard of liability for failure to supervise is "demonstrated deliberate indifference or tacit authorization of the offensive acts." *Wilson v. City of N. Little Rock*, 801 F.2d 316, 322 (8th Cir. 1986); *see also Brockinton v. City of Aherwood, Ark.*, 503 F.3d 667, 673 (8th Cir. 2007). "Under 1983, 'a claim for failure to supervise requires the same analysis as a claim for failure to train.'" *Atkinson v. City of Mountain View*, 709 F.3d 1201, 1216 (8th Cir. 2013) (quoting *Robinette v. Jones*, 476 F.3d 585, 591 (8th Cir.2007)). Further, failure to train and supervise claims "[can]not be sustained absent an underlying constitutional violation." *Royster v. Nichols*, 698 F.3d 681, 693 (8th Cir. 2012) (quoting *Sitzes v. City of W. Memphis*, 606 F.3d 461, 470 (8th Cir. 2010)).

Norem's *Monell* claims fail for several reasons. First, as discussed above, there were no underlying constitutional violations to which these claims could attach. Norem

failed to allege facts indicating that defendants violated his rights regarding the search of his cell phone and defendants had probable cause to arrest him. Second, there is no evidence that any of the defendants were deliberately indifferent in their failure to train or supervise. Norem spends a significant amount of time discussing Officer Cavin and his failure to know Iowa Code § 808.8, his alleged misunderstanding of the relevant procedures and his misstatements about if he searched the phone or simply reviewed the findings of the technicians who searched the phone. However, none of that amounts to evidence or creates a genuine issue of material facts that the City of Cedar Rapids was deliberately indifferent in training defendants or had a custom or policy regarding the issue. Rather, "a single incident cannot serve as notice for a pattern of misconduct. *See Howard v. Adkison*, 887 F.2d 134, 138 (8th Cir. 1989) (holding that a single incident, or a series of isolated incidents, is usually insufficient to infer a pattern)." *Brewington v. Keener*, 902 F.3d 796, 803 (8th Cir. 2018).

In addition, to the extent Norem argues a complete failure to train, that is unsupported by his own summary judgment record. *See* Doc. 62-3 (Norem's Appendix containing two sets of Cedar Rapids Police Department training slides and the training and operation manual for the Nighthawk operation). Finally, to the extent he alleges the training provided is incorrect, that is unsupported by both the record and the finding that defendants did not violate his rights. For these reasons, Norem's *Monell* claims will be denied.

### *E. Counts IV and VI*

Count IV of Norem's amended complaint is for "False Arrest/False Imprisonment." He alleges that he was "arrested without probable cause." Doc. 18 at 4. Nowhere in this count does Norem make any allegation that this false imprisonment was done in violation of the United States Constitution. Thus, as noted above, I understand this to be a state law tort claim. Because this order will dismiss all Norem's other claims, I decline to exercise supplemental jurisdiction over a remaining state law

claim and this claim will be dismissed without prejudice.[12] *See Mountain Home Flight Serv., Inc. v. Baxter Cnty., Ark.*, 758 F.3d 1038, 1045 (8th Cir. 2014) ("After the § 1983 claims were dismissed, the district court acted within its discretion in declining to exercise supplemental jurisdiction over the remaining state law claims.").

Count VI of Norem's amended complaint is for punitive damages. Because all other claims have been denied, his claim for punitive damages cannot proceed and will be denied.

## *V. CONCLUSION*

For the reasons set forth herein:

1. Defendants' motion (Doc. 83) for summary judgment is **granted** in its entirety. All claims asserted in this case by plaintiff Douglas Norem are **dismissed** with prejudice, except his claims for false arrest and false imprisonment (Count IV) are **dismissed** without prejudice because this court declines to exercise supplemental jurisdiction over those state law claims.

2. Norem's motions (Docs. 40, 62) for summary judgment are **denied** as moot.

3. Norem's objection (Doc. 99) is **denied**.

4. Norem's motion (Doc. 103) to supplement the record is **granted**.

5. Norem's expert disclosure motion (Doc. 100) is **denied** as moot.

6. Judgment shall enter against Norem and in favor of the defendants.

7. The Clerk of Court shall close this case.

---

[12] I note that "probable cause is a complete defense to a false imprisonment claim, whether brought under § 1983 or [state] law. *Cox*, 2011 WL 4055780, at *13 (citing *Hinton*, 2000 WL 1846195, at *3). Further, a false arrest claim under 42 U.S.C. § 1983 "fails as a matter of law where the officer had probable cause to make the arrest." *Kurtz v. City of Shrewsbury*, 245 F.3d 753, 758 (8th Cir. 2001)." *Pitts v. City of Cuba*, 913 F. Supp. 2d 688, 732 (E.D. Mo. 2012).

**IT IS SO ORDERED** this 30th day of September, 2026.

Leonard T. Strand
United States District Judge